**IN THE COURT OF APPEALS OF IOWA**

No. 23-0262
Filed May 24, 2023

**IN THE INTEREST OF R.E.,**
**Minor Child,**

**M.B., Mother,**
    **Appellant.**

_____

Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.

A mother appeals the termination of her parental rights. **AFFIRMED.**

Larry J. Brock of Brock Law Office, Washington, for appellant mother.

Brenna Bird, Attorney General, and Diane Murphy Smith, Assistant Attorney General, for Appellee State.

Jeannette Keller of Bowman, Depree, and Murphy, West Liberty, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

A mother appeals the termination of her parental rights to R.E., born in December 2019. Because of the mother's unwillingness to engage with mental-health services, immaturity, and general apathy to the duties of being a parent, we affirm.

## I.     Background Facts and Proceedings

This case first came to the attention of the Iowa Department of Health and Human Services (HHS) in July 2020, when R.E. arrived at the hospital with a brain bleed and other injuries consistent with abusive head trauma. At the time of injury, R.E. was in the care of his mother and her then-paramour. In its assessment of the situation, HHS determined that the paramour was responsible for the physical abuse, but voiced concerns about the mother as she may have known about the abuse and failed to prevent it. R.E. also tested positive for THC, which HHS held both caregivers responsible for.

As a result of this incident, HHS made a safety plan for the mother and R.E. Under the plan, R.E. was placed with his maternal grandmother, the mother was permitted supervised contact with her son, and the paramour was allowed no contact with R.E. In October 2020, the mother stipulated to an adjudication finding R.E. as a child in need of assistance (CINA). As part of the adjudication order, the child was formally removed from parental custody. The court held a dispositional hearing the next month and ordered that the removal from parental custody continue (although the mother continued to reside in the home of the grandmother where the child was placed).

Between August 2020 and February 2021, the mother allowed R.E.'s father, who abused marijuana products and was not engaged in any services, to live in the home and have unauthorized contact with R.E. Because of this, the juvenile court modified R.E.'s placement to his maternal aunt in March 2021. HHS provided transportation for the mother to and from the aunt's house for all-day visits with R.E., but the mother did not take full advantage of these opportunities, choosing instead to sleep in during the mornings and work in the afternoon.

HHS referred the mother and father to mental-health services, but neither promptly followed through with treatment, if at all. The mother was eventually diagnosed with several mental disorders, and a psychologist recommended several years of ongoing mental-health treatment. The mother did not consistently take her medications or attend therapy sessions, and she was discharged from therapy for lack of attendance.

HHS provided several opportunities for the mother and father to take parenting classes. The mother attended some classes, but she did not stay engaged, was often distracted, and expressed her belief that she did not need to go. She similarly struggled with engagement while visiting R.E., which a social worker attributed to the mother's immaturity.

The mother entered into multiple romantic relationships throughout the life of the case. As noted above, the mother became involved with the father again after R.E. was adjudicated as a CINA. The father continued to abuse marijuana products and, although the mother told HHS she broke off her relationship with the father, she continued to associate with him. The mother also entered into a relationship with another paramour and moved in with him after a few months,

without informing HHS or taking any steps to ensure the paramour would not be dangerous to R.E.

The juvenile court held a permanency hearing over three days in July, August, and November 2021. The court found that the parents had not made sufficient progress toward reunification with their child and directed HHS to petition for the termination of both parents' rights. After the hearing, the mother had a mental-health crisis that led to her hospitalization and recommendations for a change in medication and attendance at therapy. Still, the mother rarely attended her therapy appointments. By the time of the termination hearing, the mother's visits with her son had never progressed past fully supervised.

The matter proceeded to hearing in October 2022. In February 2023, the juvenile court terminated both parents' rights, finding the State proved the statutory elements of termination for both parents under Iowa Code section 232.116(1)(h) (2022). The mother appeals, but the father does not.

## II. Standard of Review

"We review termination of parental rights de novo." *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). "The primary interest in termination proceedings is the best interests of the child." *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III. Discussion

The mother argues that the State did not prove by clear and convincing evidence that her son could not be returned to her at the present time, that HHS did not make reasonable efforts at reunification, and that she should have been given another six months for reunification. We reject each argument for the reasons that follow.

**A.     Statutory Grounds**

The mother first challenges a single element of the statutory grounds for termination: whether "[t]here is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time." Iowa Code § 232.116(1)(h)(4).

The record shows that R.E. could not be returned to his mother at the time of the termination hearing. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean at the time of the termination hearing). The issues that gave rise to this termination have not been rectified, and no evidence suggests that the mother is effectively managing her problems. First, the mother has refused to meaningfully address her mental-health issues. Her attendance at therapy has been sporadic at best, and she has reported she does not believe she needs therapy. Considering the consistent treatment recommendations, we agree with the juvenile court that the mother's mental-health issues remain pervasive.

Second, the mother's immaturity weighs against returning the child to her. The mother, who was nineteen years old during the termination hearing, prioritized her romantic relationships over caring for her son, showing little foresight or concern for R.E.'s well-being. The mother's inability to look out for her child is especially concerning given the history of a past paramour injuring R.E. and blowing marijuana smoke into the child's face.

The mother's immaturity also bleeds into her seeming apathy toward the duties of being a parent. She has not consistently attended parenting classes, and when she has, she has been disengaged. The mother has had similar struggles

with disengagement when visiting R.E. HHS offered all-day visits to the mother, but the mother did not use them fully, choosing instead to sleep late into the morning and work during the afternoon. The mother also has not financially contributed to her son's well-being. These unaddressed mental-health issues, along with the mother's immaturity and apathy towards being a parent, illustrate that R.E. could not be returned to his mother without facing some adjudicatory harm. *See* Iowa Code §§ 232.102(4)(a)(2), .116(1)(e)(4).

**B.     Reasonable Efforts**

Second, the mother argues HHS did not make reasonable reunification efforts. She claims that she requested but was not provided mental-health and substance-abuse services, transportation, assistance with a psychological evaluation, additional visitation, longer visitation periods, less supervision of visits, and several other services. The mother also complains that HHS placed several "obstacles . . . in front of [her,] which prevented her from effectively working toward reunification." We find these complaints, even if preserved, do not establish reversible error. We also agree with the State's observation that, to the extent any obstacles were placed in front of the mother, they were obstacles of her own making.

"Although [HHS] must make reasonable efforts in furtherance of reunification, with some exceptions not applicable here, parents have a responsibility to object when they claim the nature or extent of services is inadequate." *In re L.M.*, 904 N.W.2d 835, 839–40 (Iowa 2017) (footnote omitted). "A parent's objection to the sufficiency of services should be made 'early in the process so appropriate changes can be made.'" *Id.* at 840 (quoting *C.B.*, 611

N.W.2d at 493–94). The mother here does not point to any occasion where the juvenile court considered and ruled on any of her complaints about the services HHS offered. For that reason, the mother waived her objections to HHS's efforts. *See id.* ("In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." (quoting *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002)).

Even if the mother properly presented her objection to HHS's efforts, we would find HHS made reasonable efforts to reunite mother and son. "Reasonable efforts are services 'to preserve and unify a family prior to the out-of-home placement of a child in foster care or to eliminate the need for removal of the child or make it possible for the child to safely return to the family's home.'" *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019) (quoting Iowa Code § 232.102(10)(a) (2019)). HHS offered multiple services to the mother, including solution-based casework, individual supervision, parenting classes, medication management, and substance-abuse and mental-health evaluation and treatment. The mother also had the opportunity to live with her son at the beginning of this case, but because of the father moving in, the son was moved to the aunt's home by court order following a review hearing. Once the son moved residences, HHS provided the mother with transportation for all-day visits, but she did not take full advantage of these opportunities. HHS made reasonable efforts. *See id.*

## C. Additional Time

Third, the mother argues she should have been granted an additional six months to work towards reunification. As a general matter, "the juvenile court may deny termination and give the parent an additional six months for reunification only

if the need for removal 'will no longer exist at the end of the additional six-month period.'" *In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (quoting Iowa Code § 232.104(2)(b)). In this case, the mother showed little meaningful improvement between the CINA adjudication and termination hearing—a period of around two years. Given the extensive mental-health treatment needed by the mother, as well as her immaturity, apathy toward parenting, and lack of protective capacity, we cannot say that the need for removal would not exist at the end of another six-month period. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination . . . by hoping someday a parent will learn to be a parent and provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010).

## IV.    Disposition

We find the State proved a statutory ground for termination, the mother waived her challenge to the services HHS offered, and additional time for reunification is not appropriate. We affirm termination of the mother's parental rights.

**AFFIRMED.**